

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 3:22-cr-02⁶ |
| | ) |
| | ) 18 U.S.C. § 1349 |
| v. | ) Conspiracy to Commit Wire Fraud |
| | ) (Count 1) |
| | ) |
| JOSHUA BRIAN ROMANO | ) 18 U.S.C. §§ 1343 & 2 |
| | ) Wire Fraud |
| and | ) (Counts 2-7) |
| | ) |
| LINDSEY EPPS PASSMORE, | ) Forfeiture Allegation |
| | ) |
| Defendants. | ) |

**INDICTMENT**

March 2022 Term—at Richmond, Virginia

THE GRAND JURY CHARGES THAT:

**INTRODUCTORY ALLEGATIONS**

At all times relevant to this Indictment:

1. Defendant JOSHUA BRIAN ROMANO owned and operated various businesses that purchased, rehabilitated, and sold residential properties in the Richmond, Virginia metropolitan area. Those businesses included CNJ Ventures, LLC, Cobblestone Development Group, and Falling Water Construction and Design, LLC.

2. Defendant LINDSEY EPPS PASSMORE was employed as a paralegal by Law Firm A, a solo practice run by Attorney A. Law Firm A specialized in real estate law, most particularly representation of parties in real estate closings and other transactions.

3. Law Firm A maintained real estate trust accounts for use in real estate transactions. Funds deposited in those real estate trust accounts were held in trust or escrow and

could be disbursed only for transaction-specific purposes and with the consent of the client who deposited the funds with Law Firm A. Funds deposited into Law Firm A's real estate trust account belonged to the client who deposited those funds until the funds were disbursed in accordance with the client's directions. PASSMORE's duties included the disbursement of funds from Law Firm A's real estate trust accounts.

4. One of Law Firm A's real estate trust accounts was account number xxxxx9976 with Park Sterling Bank. PASSMORE was authorized to transact business for Law Firm A using that account.

5. Lender A was a private "hard money" lender that lent funds to ROMANO (acting through CNJ Ventures and other entities) for use in the purchase and rehabilitation of residential properties. These "hard money" loans were generally made for shorter terms and at much higher interest rates than conventional commercial loans. Lender A and ROMANO contemplated that ROMANO would repay the principal balance on the loans from the profit on the sale of the residential properties.

6. Acting as both borrower (as owner of CNJ Ventures or Cobblestone) and guarantor (in his personal capacity) of the "hard money" loans, ROMANO executed Commercial Loan Affidavits identifying the property to be developed by the property's address. These affidavits also provided that "[t]he purpose of the loan secured by a first deed of trust on the [property described in the affidavit], is business or commercial, and not for personal, household, or family purposes. Specifically, the purpose is to purchase and/or rehabilitate investment real estate."

7. As a general rule, the "hard money" loans were also generally governed by

2

Construction Loan Escrow Agreements or similar agreements. In all instances, though, the funds loaned ("the escrowed funds") were held in Law Firm A's real estate trust account and could be disbursed to ROMANO only for specific purposes related to the purchase and rehabilitation of the specific properties in question. In all instances, ROMANO was also required to notify Lender A of the amount sought and the purpose of the disbursement. Lender A then had to authorize the disbursement (also referred to as a "draw").

8. Law Firm A represented Lender A and ROMANO with respect to the loans referenced above. In addition to drafting escrow agreements and other documents, Attorney A held funds lent to ROMANO in escrow accounts, including Park Sterling account number xxxxx9976, pending disbursement in accordance with the directives of the relevant escrow agreements or Lender A's instructions. PASSMORE was generally responsible for the disbursement of Lender A's escrowed funds to ROMANO.

## COUNT ONE
(Conspiracy to Commit Bank Fraud)

9. The Introductory Allegations contained in paragraphs one through eight are incorporated by reference as if fully set forth here.

10. Beginning before at least September 2, 2015, and continuing through on or about at least December 5, 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendants JOSHUA BRIAN ROMANO and LINDSEY EPPS PASSMORE did unlawfully and knowingly conspire with each other to commit offenses contained within Chapter 63 of Title 18 of the United States Code, that is: to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses,

3

representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitting and causing transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH SEVEN
(Wire Fraud)

11. The Introductory Allegations contained in paragraphs one through eight are incorporated by reference as if fully set forth here.

12. Beginning before at least September 2, 2015, and continuing through on or about at least December 5, 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendants JOSHUA BRIAN ROMANO and LINDSEY EPPS PASSMORE, aided, abetted, induced, counseled, and encouraged by each other, did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud Lender A and to obtain money, funds, and property belonging to Lender A which had been entrusted to Law Firm A, by means of materially false and fraudulent pretenses and promises.

### Purpose of the Scheme and Artifice to Defraud

13. The purpose of the scheme and artifice to defraud was for ROMANO, aided and abetted by PASSMORE, to: (a) unlawfully enrich himself though embezzlement of Lender A's funds held in escrow by Law Firm A; and (b) conceal the embezzlement from Lender A and Attorney A, thereby avoiding further inquiries about the status of the embezzled funds and requests for repayment, as well as increasing the likelihood that Lender A and other lenders would make additional loans to ROMANO.

4

### Manner and Means of the Scheme and Artifice to Defraud

14. The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

    a. Acting at ROMANO's direction, and without the knowledge or authorization of Lender A or Attorney A, PASSMORE wired escrowed funds to be applied by ROMANO toward various purposes not authorized by Lender A.

    b. Upon receiving the escrowed funds, ROMANO did not spend the funds on materials or services related to the construction projects for which those funds had been specifically escrowed.

    c. Rather, ROMANO used the funds to cover expenses for other unrelated construction projects, expenses associated with the sale of unrelated properties, business operating expenses, and personal expenses.

    d. At times, ROMANO arranged the purchase of properties for the purpose of using funds escrowed for those purchases to fund other non-authorized work.

    e. To conceal the embezzlement, PASSMORE sent Lender A emails with false escrow balances as to the relevant loans.

    f. ROMANO falsely claimed at various times that Attorney A and PASSMORE had embezzled the escrowed funds themselves without ROMANO's knowledge.

15. ROMANO and PASSMORE embezzled funds that Lender A had deposited into Law Firm A's real estate trust account number xxxxx9976 with Park Sterling Bank in connection with CNJ Ventures' purchase and rehabilitation of the following properties:

    a. 2000 Prince George Road, Richmond, Virginia

    b. 2520 Stratford Road, Richmond, Virginia

    c. 3414 West Franklin Street, Richmond, Virginia

    d. 4110 Grove Avenue, Richmond, Virginia

    e. 2624 Idlewood Avenue, Richmond, Virginia

    f. 701 North 35th Street, Richmond, Virginia

16. On March 20, 2017, Lender A deposited the sum of $223,100 into Park Sterling account number xxxxx9976 to be held in escrow and released only for expenses associated with construction materials and work on 2624 Idlewood. PASSMORE, acting at ROMANO's direction, engaged in the following transactions utilizing the funds held in escrow for the Idlewood project:

    a. On March 21, 2017, PASSMORE sent an email to Lender A stating that "we need to request a draw from Idlewood in the amount of $71,565.03." The same day Lender A responded to the email (with ROMANO copied), "Linsey Please assist Thank you."

    b. Later on March 21, 2017, PASSMORE ordered the wiring of $71,565.03 of the funds escrowed for the Idlewood project to Law Firm B, which was handling the closing on ROMANO's sale of 11340 Buckhead Terrace, Midlothian, Virginia.

ROMANO had to apply the $71,565.03 to various outstanding expenses at closing in order to complete the sale of the Buckhead Terrace property.

c. On April 28, 2017, PASSMORE, without the knowledge or permission of Lender A, ordered the wiring of $12,239.61 of funds escrowed for the Idlewood project to Law Firm C, which was handling the closing on ROMANO's sale of 11 Overbrook Road, Richmond, Virginia. ROMANO had to apply the $12,239.61 to various outstanding expenses at closing in order to complete the sale of the Overbrook Road property.

d. On June 15, 2017, PASSMORE ordered the wiring of a $33,975 disbursement from the funds escrowed for the Idlewood project to Falling Water's operating account without Lender A's knowledge or permission. ROMANO applied only $9,450 of the disbursement to the Idlewood project.

e. On August 3, 2017, PASSMORE ordered the wiring of a $34,975 disbursement from the funds escrowed for the Idlewood project to Falling Water's operating account with Lender A's authorization. ROMANO misapplied approximately $25,895.83 of the disbursement on expenses unrelated to the Idlewood project.

17. Lender A eventually became concerned about the disposition of the escrowed funds and inquired with PASSMORE as to the escrow balances for each property. In response, PASSMORE sent Lender A emails that falsely reported the balances held in escrow for these properties.

18. For instance, on December 5, 2017, PASSMORE sent Lender A an email falsely reporting the escrow account balances as to the following properties:

7

| Property | Reported Escrow Balance | Actual Escrow Balance |
|---|---|---|
| 2000 Prince George Road | $243,000 | $100 |
| 2520 Stratford Road | $194,040 | $140 |
| 3414 West Franklin Street | $151,004.62 | $222.17 |
| 4110 Grove Avenue | $187,657 | $88.87 |
| 2624 Idlewood Avenue | $56,264.61 | $125 |
| 701 North 35th Street | $168,612.01 | $0 |

### Execution of the Scheme and Artifice to Defraud

19. On or about the following dates, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendants JOSHUA BRIAN ROMANO and LINDSEY EPPS PASSMORE, aided, abetted, induced, counseled, and encouraged by each other, caused to be sent and delivered in interstate and foreign commerce via wire communication the signs, signals, and writings set forth below:

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 2 | 3/21/2017 | Email from PASSMORE's account with Law Firm A to Lender A routed outside the Commonwealth of Virginia requesting draw of $71,565.03 from funds escrowed for Idlewood project |
| 3 | 3/21/2017 | Wiring of $71,565.03 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to account of Law Firm B for ROMANO's sale of 11340 Buckhead Terrace |

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 4 | 4/28/2017 | Wiring of $12,239.61 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to account of Law Firm C for ROMANO's sale of 11 Overbrook Road |
| 5 | 6/15/2017 | Wiring of $33,975 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to Falling Water operating account |
| 6 | 8/3/2017 | Wiring of $34,975 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to Falling Water operating account |
| 7 | 12/5/2017 | Email from PASSMORE's account with Law Firm A to Lender A routed outside the Commonwealth of Virginia falsely reporting escrow balances on projects set forth in paragraph 18 |

(In violation of Title 18, United States Code, Sections 1343 & 2.)

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendants are notified that, if convicted of any of the offenses alleged in Counts One through Seven, they shall forfeit to the United States any property constituting, or derived from, proceeds obtained directly or indirectly as the result of such violations, including any assets that may be directly forfeitable as proceeds or subject to forfeiture as a substitute asset.

Property subject to forfeiture includes, but is not limited to, **a forfeiture money judgment in the sum of at least $1,206,953,27.**

(In accordance with 18 U.S.C. § 982(a)(2), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).)

A TRUE BILL:

_____
FOREPERSON

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Michael C. Moore
Assistant United States Attorney