IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Richmond Division



FILED
AUG 16 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 3:22-cr-026-REP |
| | ) | |
| | ) | 18 U.S.C. § 1349 |
| v. | ) | Conspiracy to Commit Wire Fraud |
| | ) | (Count 1) |
| | ) | |
| JOSHUA BRIAN ROMANO, | ) | 18 U.S.C. §§ 1343 & 2 |
| | ) | Wire Fraud |
| Defendant. | ) | (Counts 2-7) |
| | ) | |
| | ) | 18 U.S.C. § 157(3) |
| | ) | Bankruptcy Fraud |
| | ) | (Count 8) |
| | ) | |
| | ) | 18 U.S.C. § 152(2) |
| | ) | False Statement Under Oath In Relation to |
| | ) | Bankruptcy |
| | ) | (Count 9) |
| | ) | |
| | ) | 18 U.S.C. §§ 981 & 982 |
| | ) | Forfeiture Allegation |

## SUPERSEDING INDICTMENT

August 2022 Term—at Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### INTRODUCTORY ALLEGATIONS

At all times relevant to this Superseding Indictment:

1. Defendant JOSHUA BRIAN ROMANO owned and operated various businesses that purchased, rehabilitated, and sold residential properties in the Richmond, Virginia metropolitan area. Those businesses included CNJ Ventures, LLC, Cobblestone Development Group, and Falling Water Construction and Design, LLC.

2. Lindsey Epps Passmore was employed as a paralegal by Law Firm A, a solo practice run by Attorney A. Law Firm A specialized in real estate law, most particularly representation of parties in real estate closings and other transactions.

3. Law Firm A maintained real estate trust accounts for use in real estate transactions. Funds deposited in those real estate trust accounts were held in trust or escrow and could be disbursed only for transaction-specific purposes and with the consent of the client who deposited the funds with Law Firm A. Funds deposited into Law Firm A's real estate trust account belonged to the client who deposited those funds until the funds were disbursed in accordance with the client's directions. Passmore's duties included the disbursement of funds from Law Firm A's real estate trust accounts.

4. One of Law Firm A's real estate trust accounts was account number xxxxx9976 with Park Sterling Bank. Passmore was authorized to transact business for Law Firm A using that account.

5. Lender A was a private "hard money" lender that lent funds to ROMANO (acting through CNJ Ventures and other entities) for use in the purchase and rehabilitation of residential properties. These "hard money" loans were generally made for shorter terms and at much higher interest rates than conventional commercial loans. Lender A and ROMANO contemplated that ROMANO would repay the principal balance on the loans from the profit on the sale of the residential properties.

6. Acting as both borrower (as owner of CNJ Ventures or Cobblestone) and guarantor (in his personal capacity) of the "hard money" loans, ROMANO executed Commercial Loan Affidavits identifying the property to be developed by the property's address. These

affidavits also provided that "[t]he purpose of the loan secured by a first deed of trust on the [property described in the affidavit], is business or commercial, and not for personal, household, or family purposes. Specifically, the purpose is to purchase and/or rehabilitate investment real estate."

7. As a general rule, the "hard money" loans were also generally governed by Construction Loan Escrow Agreements or similar agreements. In all instances, though, the funds loaned ("the escrowed funds") were held in Law Firm A's real estate trust account and could be disbursed to ROMANO only for specific purposes related to the purchase and rehabilitation of the specific properties in question. In all instances, ROMANO was also required to notify Lender A of the amount sought and the purpose of the disbursement. Lender A then had to authorize the disbursement (also referred to as a "draw").

8. Law Firm A represented Lender A and ROMANO with respect to the loans referenced above. In addition to drafting escrow agreements and other documents, Attorney A held funds lent to ROMANO in escrow accounts, including Park Sterling account number xxxxx9976, pending disbursement in accordance with the directives of the relevant escrow agreements or Lender A's instructions. Passmore was generally responsible for the disbursement of Lender A's escrowed funds to ROMANO.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

9. The Introductory Allegations contained in paragraphs one through eight are incorporated by reference as if fully set forth here.

10. Beginning before at least September 2, 2015, and continuing through on or about at least December 5, 2017, the exact dates being unknown to the Grand Jury, in the Eastern

District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendants JOSHUA BRIAN ROMANO and Lindsey Epps Passmore did unlawfully and knowingly conspire with each other to commit offenses contained within Chapter 63 of Title 18 of the United States Code, that is: to knowingly execute and attempt to execute a scheme and artifice to defraud and to obtain property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice to defraud, transmitting and causing transmission of writings, signs, and signals in interstate and foreign commerce, in violation of Title 18, United States Code, Section 1343.

(In violation of Title 18, United States Code, Section 1349.)

## COUNTS TWO THROUGH SEVEN
(Wire Fraud)

11. The Introductory Allegations contained in paragraphs one through eight are incorporated by reference as if fully set forth here.

12. Beginning before at least September 2, 2015, and continuing through on or about at least December 5, 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, defendant JOSHUA BRIAN ROMANO and Lindsey Epps Passmore, aided, abetted, induced, counseled, and encouraged by each other, did knowingly, unlawfully, and with intent to defraud, execute and attempt to execute a scheme and artifice to defraud Lender A and to obtain money, funds, and property belonging to Lender A which had been entrusted to Law Firm A, by means of materially false and fraudulent pretenses and promises.

4

### Purpose of the Scheme and Artifice to Defraud

13.     The purpose of the scheme and artifice to defraud was for ROMANO, aided and abetted by Passmore, to: (a) unlawfully enrich himself though embezzlement of Lender A's funds held in escrow by Law Firm A; and (b) conceal the embezzlement from Lender A and Attorney A, thereby avoiding further inquiries about the status of the embezzled funds and requests for repayment, as well as increasing the likelihood that Lender A and other lenders would make additional loans to ROMANO.

### Manner and Means of the Scheme and Artifice to Defraud

14.     The manner and means of the scheme and artifice to defraud included, but were not limited to, the following:

   a.     Acting at ROMANO's direction, and without the knowledge or authorization of Lender A or Attorney A, Passmore wired escrowed funds to be applied by ROMANO toward various purposes not authorized by Lender A.

   b.     Upon receiving the escrowed funds, ROMANO did not spend the funds on materials or services related to the construction projects for which those funds had been specifically escrowed.

   c.     Rather, ROMANO used the funds to cover expenses for other unrelated construction projects, expenses associated with the sale of unrelated properties, business operating expenses, and personal expenses.

   d.     At times, ROMANO arranged the purchase of properties for the purpose of using funds escrowed for those purchases to fund other non-authorized work.

5

  e. To conceal the embezzlement, Passmore sent Lender A emails with false escrow balances as to the relevant loans.

  f. ROMANO falsely claimed at various times that Attorney A and Passmore had embezzled the escrowed funds themselves without ROMANO's knowledge.

15. ROMANO and Passmore embezzled funds that Lender A had deposited into Law Firm A's real estate trust account number xxxxx9976 with Park Sterling Bank in connection with CNJ Ventures' purchase and rehabilitation of the following properties:

  a. 2000 Prince George Road, Richmond, Virginia

  b. 2520 Stratford Road, Richmond, Virginia

  c. 3414 West Franklin Street, Richmond, Virginia

  d. 4110 Grove Avenue, Richmond, Virginia

  e. 2624 Idlewood Avenue, Richmond, Virginia

  f. 701 North 35th Street, Richmond, Virginia

16. On March 20, 2017, Lender A deposited the sum of $223,100 into Park Sterling account number xxxxx9976 to be held in escrow and released only for expenses associated with construction materials and work on 2624 Idlewood. Passmore, acting at ROMANO's direction, engaged in the following transactions utilizing the funds held in escrow for the Idlewood project:

  a. On March 21, 2017, Passmore sent an email to Lender A stating that "we need to request a draw from Idlewood in the amount of $71,565.03." The same day Lender A responded to the email (with ROMANO copied), "Linsey Please assist Thank you."

      b.      Later on March 21, 2017, Passmore ordered the wiring of $71,565.03 of the funds escrowed for the Idlewood project to Law Firm B, which was handling the closing on ROMANO's sale of 11340 Buckhead Terrace, Midlothian, Virginia. ROMANO had to apply the $71,565.03 to various outstanding expenses at closing in order to complete the sale of the Buckhead Terrace property.

      c.      On April 28, 2017, Passmore, without the knowledge or permission of Lender A, ordered the wiring of $12,239.61 of funds escrowed for the Idlewood project to Law Firm C, which was handling the closing on ROMANO's sale of 11 Overbrook Road, Richmond, Virginia. ROMANO had to apply the $12,239.61 to various outstanding expenses at closing in order to complete the sale of the Overbrook Road property.

      d.      On June 15, 2017, Passmore ordered the wiring of a $33,975 disbursement from the funds escrowed for the Idlewood project to Falling Water's operating account without Lender A's knowledge or permission. ROMANO applied only $9,450 of the disbursement to the Idlewood project.

      e.      On August 3, 2017, Passmore ordered the wiring of a $34,975 disbursement from the funds escrowed for the Idlewood project to Falling Water's operating account with Lender A's authorization. ROMANO misapplied approximately $25,895.83 of the disbursement on expenses unrelated to the Idlewood project.

17.      Lender A eventually became concerned about the disposition of the escrowed funds and inquired with Passmore as to the escrow balances for each property. In response,

Passmore sent Lender A emails that falsely reported the balances held in escrow for these properties.

19. 18. For instance, on December 5, 2017, Passmore sent Lender A an email falsely reporting the escrow account balances as to the following properties:

| Property | Reported Escrow Balance | Actual Escrow Balance |
|---|---|---|
| 2000 Prince George Road | $243,000 | $100 |
| 2520 Stratford Road | $194,040 | $140 |
| 3414 West Franklin Street | $151,004.62 | $222.17 |
| 4110 Grove Avenue | $187,657 | $88.87 |
| 2624 Idlewood Avenue | $56,264.61 | $125 |
| 701 North 35th Street | $168,612.01 | $0 |

### Execution of the Scheme and Artifice to Defraud

19. On or about the following dates, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, for the purpose of executing and attempting to execute the scheme and artifice to defraud, defendant JOSHUA BRIAN ROMANO and Lindsey Epps Passmore, aided, abetted, induced, counseled, and encouraged by each other, caused to be sent and delivered in interstate and foreign commerce via wire communication the signs, signals, and writings set forth below:

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 2 | 3/21/2017 | Email from Passmore's account with Law Firm A to Lender A routed outside the Commonwealth of Virginia requesting draw of $71,565.03 from funds escrowed for Idlewood project |

8

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 3 | 3/21/2017 | Wiring of $71,565.03 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to account of Law Firm B for ROMANO's sale of 11340 Buckhead Terrace |
| 4 | 4/28/2017 | Wiring of $12,239.61 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to account of Law Firm C for ROMANO's sale of 11 Overbrook Road |
| 5 | 6/15/2017 | Wiring of $33,975 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to Falling Water operating account |
| 6 | 8/3/2017 | Wiring of $34,975 (consisting of escrowed Idlewood funds belonging to Lender A) from Law Firm A's escrow account number xxxxx9976 with Park Sterling Bank via Federal Reserve facility outside the Commonwealth of Virginia to Falling Water operating account |
| 7 | 12/5/2017 | Email from Passmore's account with Law Firm A to Lender A routed outside the Commonwealth of Virginia falsely reporting escrow balances on projects set forth in paragraph 18 |

(In violation of Title 18, United States Code, Sections 1343 & 2.)

## COUNT EIGHT
(Bankruptcy Fraud)

20. The Introductory Allegations contained in paragraphs one through eight are incorporated by reference as if fully set forth here.

21. To begin a bankruptcy case, a bankruptcy petition is filed in the United States Bankruptcy Court. Persons or businesses that file a bankruptcy petition are referred to as "debtors" under federal bankruptcy law. One type of bankruptcy case is a Chapter 7 bankruptcy, under which a debtor can obtain a discharge of certain debts. A debtor who receives a discharge has no further legal obligation to pay the discharged debts.

22. A debtor who files a Chapter 7 bankruptcy petition is required to file with the bankruptcy court, under penalty of perjury, schedules and statements of financial affairs that list all legal and equitable interests of the debtor (whether or not such interest is actually held in the debtor's name) as well as all liabilities (including debts owed to creditors) as of the date of the bankruptcy filing. Section 541 of the Bankruptcy Code (11 U.S.C. §§ 101, et seq.) defines what is included in a "bankruptcy estate" of the debtor.

23. The United States Trustee Program is the component of the Department of Justice responsible for overseeing the administration of bankruptcy cases and private trustees under 28 U.S.C. § 586 and 11 U.S.C. § 101, et seq. Upon the filing of a Chapter 7 bankruptcy petition, a Chapter 7 Trustee is appointed to act as trustee for the bankruptcy case. Title 11 U.S.C. § 704 establishes the appointed Trustee's duties, which include responsibility for the administration of the bankruptcy estate, including the liquidation of the debtor's non-exempt property, if any, and distribution of the resulting proceeds to the debtor's creditors.

24. After filing a Chapter 7 bankruptcy petition, pursuant to 11 U.S.C. § 341, a debtor

is required to appear and testify under oath in response to questions regarding the bankruptcy estate (the "341 Meeting"). The Chapter 7 Trustee presides over the 341 Meeting, under the supervision of the United States Trustee, and creditors are entitled to appear and also ask questions of the debtor.

25. Certain types of debt cannot be discharged in bankruptcy. For instance, 11 U.S.C. § 523(a)(2)(A) provides that debt "for money [to the extent obtained by] false pretenses, a false representation, or actual fraud" cannot be discharged, and 11 U.S.C. § 523(a)(4) provides that debt for "fraud while acting in a fiduciary capacity, embezzlement, or larceny" cannot be discharged.

26. A creditor who wants to challenge a debtor's attempt to discharge certain debt in a bankruptcy must initiate what is known as an "adversary proceeding" by filing a complaint. Otherwise, the debt will be discharged. The debtor can then file a response to the complaint and the bankruptcy court conducts a trial to determine whether the debt is subject to discharge.

### The Scheme and Artifice to Defraud

27. Beginning before at least January 18, 2019, and continuing through on or about September 22, 2021, the exact dates being unknown to the Grand Jury, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JOSHUA BRIAN ROMANO did devise and intend to devise a scheme to defraud one of his creditors (namely, Lender A), as well as the Chapter 7 trustee, and for the purpose of executing the scheme, made false and fraudulent representations and claims as set forth below.

### Purpose of the Scheme and Artifice to Defraud

28. The purpose of the scheme and artifice to defraud was for ROMANO to obtain

11

the discharge of debt owed to Lender A which was debt for money ROMANO had obtained by false pretenses, embezzlement, and defalcation while acting in a fiduciary capacity.

### Manner, Means, and Execution of the Scheme and Artifice to Defraud

29. The manner, means, and execution of the scheme and artifice to defraud included the following:

    a. On October 31, 2018, ROMANO filed, through his attorney, a bankruptcy petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division that was assigned docket number 18-35464-KRH. In his bankruptcy schedules, ROMANO named Lender A as one of his creditors. ROMANO subsequently attempted to have his debt to Lender A discharged in bankruptcy.

    b. On January 18, 2019, ROMANO testified under oath at a 341 Meeting related to his bankruptcy petition. At this meeting, he falsely suggested that Attorney A and Lindsey Passmore had stolen escrowed funds from him without his knowledge.

    c. On August 17, 2020, Lender A initiated an adversary proceeding filed under adversary proceeding number 20-03121-KRH, by filing though its attorney a complaint alleging that ROMANO's debt to Lender A could not be discharged in bankruptcy because ROMANO had obtained the funds in question by false pretenses, embezzlement, and defalcation while acting in a fiduciary capacity.

    d. On September 15, 2020, ROMANO filed through his attorney an answer to Lender A's complaint, falsely alleging that he had only used disbursements from escrowed funds for the improvement of the properties set forth above in accordance with

his agreements with Lender A. ROMANO also falsely claimed that he had never received any of the escrowed funds and that, to his knowledge, those funds were still in the hands of Law Firm A.

  e. On or about July 13, 2021, ROMANO testified in relation to a case under Chapter 7 of the Bankruptcy Code (that is, adversary proceeding number 20-3121-KRH, filed by Lender A in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division). Before ROMANO's testimony, the Clerk administered an oath to him and ROMANO swore to tell the truth in the testimony he was about to give. During his testimony, ROMANO falsely accused Attorney A and Lindsey Passmore of stealing certain escrowed funds without his knowledge, falsely denied that he had requested or knowingly received funds escrowed for the properties referenced in paragraph 15 of this Superseding Indictment (with the exception of 2624 Idlewood Avenue), and falsely denied that he had misused any of the escrowed funds he had received.

  f. At the conclusion of the trial, the Bankruptcy Judge presiding over the trial denied Lender A's challenge to ROMANO's discharge of the debt owed to Lender A by finding in favor of ROMANO. On August 27, 2021, the Bankruptcy Judge entered an Order finding in favor of ROMANO, denying Lender A's challenge to the discharge of the debt owed by ROMANO to Lender A, and dismissing Lender A's adversary proceeding with prejudice.

  g. On September 22, 2021, the Bankruptcy Court granted ROMANO's bankruptcy discharge, which discharged ROMANO's debts to various creditors,

including Lender A.

(In violation of Title 18, United States Code, Section 157(3).)

## COUNT NINE
(False Statement Under Oath in Relation to Bankruptcy)

30. The Introductory Allegations contained in paragraphs one through eight and allegations contained in paragraphs 21-29 of Count Eight are incorporated by reference as if fully set forth here.

31. On or about July 13, 2021, in the Eastern District of Virginia and within the jurisdiction of this Court, defendant JOSHUA BRIAN ROMANO made a false material statement under oath in and in relation to a case under Title 11 of the United States Code (that is, adversary proceeding number 20-3121-KRH, filed in the United States Bankruptcy Court for the Eastern District of Virginia as part of *In Re: Joshua B. Romano*, debtor, docket number 18-35464-KRH), by falsely testifying that, with the exception of 2624 Idlewood Avenue, he had not requested draws on the properties referenced in paragraph 15 of this Superseding Indictment and was unaware that funds from draws on any of those six properties had been deposited into his business operating account or misapplied in any way.

32. In fact, as defendant JOSHUA BRIAN ROMANO knew during the foregoing testimony, he had requested that Lindsey Passmore make the draws referenced above and was aware of the fact that Passmore had wired funds from the draws into ROMANO's business operating account (after which he used them for expenses not authorized by his agreement with Lender A) or applied them to ROMANO's expenses not authorized by his agreement with Lender A.

(In violation of Title 18, United States Code, Section 152(2).)

14

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) FED. R. CRIM. P., the defendant is notified that, if convicted of any of the offenses alleged in Counts One through Seven or Nine, he shall forfeit to the United States any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as the result of such violations, including any assets that may be directly forfeitable as proceeds or subject to forfeiture as a substitute asset.

Property subject to forfeiture includes, but is not limited to, **a sum of money of at least $1,206,953.27, which represents the proceeds of the offenses charged, which shall be reduced to a money judgment against the defendant in favor of the United States.**

(In accordance with 18 U.S.C. § 982(a)(2), 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and 21 U.S.C. § 853(p).)

A TRUE BILL:

FOREPERSON

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office

JESSICA D. ABER
UNITED STATES ATTORNEY

By: _____
Michael C. Moore
Assistant United States Attorney

15